UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Allied Seed, LLC,

Plaintiff,

v.

Norfarm Seeds, Inc.,

Defendant.

Case No. 20-cv-1520 (WMW/LIB)

**ORDER GRANTING DEFENDANT'S
MOTION TO COMPEL
ARBITRATION AND TO DISMISS**

---

This matter is before the Court on the Defendant's motion to compel arbitration
and to dismiss this case.  (Dkt. 13.)  For the reasons addressed below, the Defendant's
motion is granted.

**BACKGROUND**

This case arises out of a contract dispute relating to agricultural seed production.
Plaintiff Allied Seed, LLC (Allied), is a Wyoming limited liability company with its
principal place of business in Nampa, Idaho.  Defendant Norfarm Seeds, Inc. (Norfarm),
is a Minnesota corporation.  Both companies work in the grass seed industry.

In December 2014, Allied entered into a seed-production contract with Norfarm
(Contract).  Under the Contract, Norfarm agreed to produce seed that Allied would
subsequently purchase for resale.  The duration of the Contract was "3 Years with [an]
option to extend."  To extend the Contract, Allied was required to notify Norfarm before
the 2018 harvest (2018 Harvest Clause).  The "Quantity" of seed to be produced under
the Contract was "[t]he total production from 300 acres seeded Summer 2015" (Seeded

Summer 2015 Clause).  The Contract also incorporates the "NORAMSEED A.S.T.A." (American Seed Trade Association) arbitration rules.[1]  Section XXV of these rules provides that:

> **[A]ny difference between the parties**, even if the difference is only recognized by one party, **resulting from transactions started or concluded on the basis of the present Rules**, and which cannot be settled amicably, **shall be settled by binding arbitration** in accordance with these Rules and the applicable procedural rules of the American Arbitration Association (AAA), . . . .

(Emphasis added.)

The dispute at issue here arises out of a January 25, 2019 purchase confirmation (2019 Purchase Confirmation), in which the parties executed an agreement for Allied to purchase seed from Norfarm's 2018 harvest.  Allied contends that this seed was of lesser quality than Norfarm was contractually obligated to provide.

Allied commenced this lawsuit against Norfarm in July 2020, alleging breach of express warranty (Count I), breach of implied warranty of merchantability (Count II), breach of implied warranty of fitness for a particular purpose (Count III), intentional misrepresentation (Count IV), violation of Idaho's Consumer Protection Act (Count V), violation of Minnesota's Uniform Deceptive Trade Practices Act (Count VI, mislabeled Count VII), and violation of the Idaho Pure Seed Law (Count VII, mislabeled Count VIII).  Norfarm moves to compel arbitration and to dismiss the complaint.

---

[1]     NORAMSEED refers to the North American Seed Rules, which are trade rules established by the seed industry.

## ANALYSIS

### I.        Motion to Compel Arbitration

Norfarm seeks to compel arbitration, arguing that the parties agreed to arbitrate any disputes arising under the Contract.   Allied contends that the 2019 Purchase Confirmation is a new contract.   As such, the terms of the Contract, including the Contract's arbitration terms, do not apply to this dispute.

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.*, requires the enforcement of written agreements to arbitrate disputes and reflects a "liberal federal policy favoring arbitration agreements."   *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).   "[C]ontract provisions directing arbitration shall be enforceable in all but limited circumstances."   *Kelly v. Golden*, 352 F.3d 344, 349 (8th Cir. 2003).   A motion to compel arbitration must be granted if there is a valid arbitration agreement between the parties and the dispute falls within the scope of the arbitration agreement.   *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1198 (8th Cir. 2008) (citing 9 U.S.C. § 4).   Although state contract law governs whether an enforceable agreement exists, federal law governs whether the dispute is within the scope of the parties' arbitration agreement.   *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009).   A motion to compel arbitration is analyzed either as a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., or as a motion for summary judgment under Rule 56, Fed. R. Civ. P., depending on whether "matters outside the pleadings" have been

presented and considered. *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 881–82 (8th Cir. 2017); *accord Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018).

### A.      Existence of an Arbitration Agreement

State contract law governs whether the parties have entered into a valid agreement to arbitrate a particular matter. *Keymer v. Mgmt. Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999). Here, as in any case arising under diversity jurisdiction, the choice-of-law rules for the state in which this Court sits apply. *DCS Sanitation Mgmt., Inc. v. Castillo*, 435 F.3d 892, 895 (8th Cir. 2006). Neither party disputes that Minnesota law applies.[2]

Under Minnesota law, contract formation requires the communication of a specific and definite offer, acceptance of that offer, and consideration. *See Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626–27 (Minn. 1983). Courts evaluate the objective conduct of the parties when determining whether the parties have entered into a valid and enforceable contract. *Cederstrand v. Lutheran Brotherhood*, 117 N.W.2d 213, 221 (Minn. 1962). A valid and enforceable contract does not exist when an essential term remains uncertain. *Triple B & G, Inc. v. City of Fairmont*, 494 N.W.2d 49, 53 (Minn. Ct. App. 1992). Here, the parties dispute whether the duration of the Contract extends to actions taken pursuant to the 2019 Purchase Confirmation.

---

[2]      Allied argues that either Minnesota law *or* Idaho law could be applied because there is "no conflict" between Minnesota law and Idaho law as to any of the issues presented by this case and both states have "substantial relationships" to the disputed transaction. Norfarm does not appear to dispute the application of either Minnesota or Idaho law. Whether Idaho law applies need not be resolved for purposes of this instant dispute, however.

Allied argues that the parties lack a contractual agreement to arbitrate this dispute because the Contract "expired and did not cover the transaction at issue." According to Allied, the Contract ended "by its terms in December 2017."[3] Allied's position implies that the three-year term began on the date the Contract was signed. By contrast, Norfarm argues that the "3 Years" referenced in the Contract refers to three crop years following the 2015 establishment year.[4] Consequently, according to Norfarm, the Contract covered the 2016, 2017, and 2018 crop years. As such, Norfarm contends, the 2018 harvest is the third installment under the Contract and, therefore, is subject to the terms of the Contract.

The construction and effect of an unambiguous contract present questions of law. *Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003). "A contract is ambiguous if, based upon its language alone, it is reasonably susceptible of more than one interpretation." *Id.* (internal quotation marks omitted). The primary goal of contract interpretation is to determine and enforce the intent of the contracting parties. *Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.*, 913 N.W.2d 687, 692 (Minn. 2018). When interpreting a written instrument, "the intent of the parties is determined from the

---

[3]   Allied first alleges in the complaint that the "2014 Contract expired 2018 by its terms after three years" [sic] and then later argues that the Contract expired "by its terms in December 2017." These positions are slightly inconsistent. However, Allied's position appears to be that the Contract expired prior to the 2018 harvest.

[4]   The parties do not dispute that an "establishment year" is the year the seed is first planted, allowing for the seed to take root. Although Allied argues that "[n]othing in the one-page [C]ontract" supports the proposition that the grass seed at issue *requires* an establishment year, Allied presents no argument addressing the meaning of the Seeded Summer 2015 Clause if the requirement of an establishment year were not implicit in the Contract.

plain language of the instrument itself." *Travertine Corp. v. Lexington-Silverwood*, 683 N.W.2d 267, 271 (Minn. 2004). A district court should not rewrite, modify, or limit the effect of a contract provision by a strained construction when the contractual provision is clear and unambiguous. *Id.*

Here, the plain language of the Contract provides that its duration is for "3 Years with [an] option to extend." Because the Contract does not define "year," the term is afforded its "plain and ordinary" meaning. *See Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 394 (Minn. 1998). A year ordinarily refers to one calendar year or approximately 365 days. *See* Webster's Third New International Dictionary 1827 (2002). But construing the plain language of "year" does not resolve this dispute because the Contract fails to specify either the commencement or the end of the three-year term. Knowing this information is necessary to determine whether the 2018 harvest is subject to the Contract.

To discern the parties' intent, a court construes a contract as a whole and attempts to harmonize all clauses within the contract. *Storms, Inc. v. Mathy Constr. Co.*, 883 N.W.2d 772, 776 (Minn. 2016). In doing so, the court avoids an interpretation of the contract that would render a provision of the contract meaningless. *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 526 (Minn. 1990).

Allied disagrees with Norfarm's interpretation of the Contract. But Allied fails to offer an alternative reasonable interpretation that harmonizes the Contract's three-year clause, the 2018 Harvest Clause, and the Seeded Summer 2015 Clause, without rendering

the latter two clauses meaningless.[5]  The Contract provides that price and shipment dates are determined based on the "year of harvest," and it is undisputed that the first "year of harvest" under the Contract occurred in 2016.  Thus, when the Contract is read as a whole, the three-year term of the Contract includes 2018 as one of the harvest years.  And the 2019 Purchase Confirmation undisputedly pertains to Allied's agreement to purchase seed from Norfarm's 2018 harvest.  Because the 2018 harvest is subject to the terms of the Contract, the 2019 Purchase Confirmation either "started or concluded" on the basis of the NORAMSEED A.S.T.A. rules, making the rules applicable to the instant dispute.[6]

For these reasons, pursuant to the NORAMSEED A.S.T.A. rules as incorporated by the parties' Contract, the 2019 Purchase Confirmation is subject to a valid arbitration agreement.

---

[5]   Allied argues that any ambiguities within the Contract should be construed against Norfarm, the drafting party.  That ambiguities are resolved against the contract's drafter is a long-standing principle of contract interpretation.  *See, e.g.*, *Wick v. Murphy*, 54 N.W.2d 805, 809 (Minn. 1952).  However, this principle applies only as a tiebreaker, after a court's attempt to resolve an ambiguity through extrinsic evidence has failed. *Staffing Specifix*, 913 N.W.2d at 694.  Here, because Allied has not set forth a reasonable alternative interpretation of the Contract, Allied has not demonstrated that the Contract is ambiguous.  Moreover, to the extent that the Contract's duration *is* ambiguous, any such ambiguity can be resolved through undisputed extrinsic evidence as demonstrated herein. As such, the interpretive tiebreaker does not apply.

[6]   Allied argues that, because Idaho law requires seeds to include an arbitration label on the package, *see* Idaho Code §§ 22-415, 22-436, this is "further confirmation" that the parties did not intend to arbitrate disputes arising out of the 2019 Purchase Confirmation. But Allied cites no legal authority to support a determination that Idaho law negates the parties' contractual agreement.  Nor does Allied's reliance on Idaho law harmonize the Contract's three-year clause, the 2018 Harvest Clause, and the Seeded Summer 2015 Clause.

**B.      Scope of the Arbitration Agreement**

As the party opposing arbitration, Allied must prove that the claim at issue is unsuitable for arbitration. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000). Arbitration is mandatory when "the underlying factual allegations simply touch matters covered by the arbitration provision." *Zetor N. Am. v. Rozeboom*, 861 F.3d 807, 810 (8th Cir. 2017) (internal quotation marks omitted). Arbitration provisions are broadly enforced unless the arbitration clause is not susceptible of an interpretation that covers the dispute. *3M Co.*, 542 F.3d at 1199; *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25 (explaining that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

Here, by referencing the NORAMSEED A.S.T.A. rules, the Contract effectively incorporates these rules, including the mandatory arbitration provision. *See Lebanon Chem. Corp. v. United Farmers Plant Food, Inc.*, 179 F.3d 1095, 1100 (8th Cir. 1999). And these rules, by their terms, require arbitration of any dispute "resulting from transactions started or concluded on the basis of the [NORAMSEED A.S.T.A.] Rules." As addressed above, the disputed transaction falls within the scope of the Contract's three-year duration. And Allied does not argue that the claims at issue here are otherwise beyond the scope of the Contract's arbitration agreement. Accordingly, the scope of the arbitration agreement encompasses the disputes here arising out of the 2019 Purchase Confirmation.

For these reasons, Norfarm's motion to compel arbitration is granted.

## II.      Motion to Dismiss

Norfarm also moves to dismiss this case.  Allied asks this Court to either stay the case or dismiss the case without prejudice if arbitration is compelled.

Title 9, United States Code, Section 3 provides that a district court shall stay an action until arbitration is completed in accordance with the terms of the agreement. 9 U.S.C. § 3.  The Eighth Circuit has interpreted 9 U.S.C. § 3 to mean that when a federal court grants a motion to compel arbitration, it is within that court's discretion to determine whether to dismiss or stay the case pending arbitration.  *See Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 821 (8th Cir. 2015) (citing *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769–70 (8th Cir. 2011)).

Here, Norfarm argues that because all of Allied's claims are subject to the arbitration agreement in the Contract, dismissal is warranted.  At the hearing on the motion to dismiss and to compel arbitration, Allied identified no material difference between staying the case and dismissing it without prejudice.  This Court, in its discretion, dismisses this case without prejudice.  *See id.*

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1.      Defendant Norfarm Seeds, Inc.'s motion to compel arbitration and to dismiss this case, (Dkt. 13), is **GRANTED**; and

2.      This case is **DISMISSED WITHOUT PREJUDICE**.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  March 24, 2021                                    s/Wilhelmina M. Wright
                                                          Wilhelmina M. Wright
                                                          United States District Judge